UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ROBERT M. LINDER, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | 3:10-cv-437 |
| | ) | *Phillips* |
| | ) | |
| DAVID OSBORNE, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

This is a petition for the writ of habeas corpus, pursuant to 28 U.S.C. § 2254, filed by petitioner Robert M. Linder ("petitioner"), in which he alleges that the enhanced sentence imposed by his trial court was unconstitutional in light of *Blakely v. Washington*, 542 U.S. 296 (2004). The matter is before the court on the answer to the petition filed by the Tennessee Attorney General on behalf of the respondent and petitioner's response thereto, and petitioner's motion for summary judgment and respondent's response thereto. For the following reasons, petitioner's motion for summary judgment will be **DENIED**, the petition for the writ of habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**.

I.   Standard of Review

A state prisoner is entitled to habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254.  Under Rule 8 of the Rules Governing Section 2254 Cases In The United States District Courts, the court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required.  If no hearing is required, the district judge is to dispose of the case as justice dictates.  If the record shows conclusively that petitioner is not entitled to relief under § 2254, there is no need for an evidentiary hearing and the petition should be denied.  *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

II.  Factual Background

The respondent has provided the court with copies of the relevant documents as to petitioner's bench trial, direct appeal, and post-conviction proceedings. [Court File No. 15, Notice of Manual Filing of Documents, Addenda 1-4; Court File No. 20, Addenda 5-6; Court File No. 34, Addendum 6, Doc. 8, Addenda 7-10].  After a bench trial before the Circuit Court of Blount County, Tennessee, petitioner was convicted of especially aggravated sexual exploitation of a minor and sentenced to a term of imprisonment of 12 years.  On direct appeal, petitioner challenged the validity of the search of his residence; he also claimed that his sentence was excessive.  The conviction was affirmed on direct appeal, but his sentence was modified by the Tennessee Court of Criminal Appeals to a term of imprisonment of 11

years. *State v. Linder*, No. E2004-02848-CCA-R3-CD, 2006 WL 2714266 (Tenn. Crim. App. Sept. 22, 2006) [Addendum 2, Doc. 3], *perm. app. denied, id.* (Tenn. Jan. 29, 2007) [Addendum 2, Doc. 5].

The Tennessee Court of Criminal Appeals summarized the facts behind petitioner's conviction as follows:

> On January 10, 2002, Blount County law enforcement officers executed a warrant to search the defendant's residence located at 2001 Wayne Circle in Maryville. The officers were investigating allegations that the defendant had taken pictures and videotaped his four-year-old step-granddaughter, LE, engaging in sexual activity. The officers seized five computers and other assorted computer hardware and software items. Pretrial, the defense moved to suppress the evidence seized from the home on the grounds that the officers failed to comply with Rule 41 of the Tennessee Rules of Criminal Procedure and Tennessee Code Annotated section 39-17-1007. The trial court conducted an evidentiary suppression hearing and denied the defendant's motion.
>
> Thereafter, the defendant was tried on September 9, 2004, by the trial court sitting without a jury, and the court found him guilty of the charged offense of especially aggravated sexual exploitation of a minor, a Class B felony. See Tenn.Code Ann. § 39-17-1005 (2003). At a separate hearing on November 8, 2004, the trial court sentenced the defendant to a 12-year term of imprisonment, as a Range I standard offender. On appeal, the defendant argues that the trial court erred in denying his motion to suppress, and he challenges his sentence as excessive.
>
> The defendant does not contest the sufficiency of the convicting evidence presented at his bench trial, and we need not dwell at length on the proof introduced. The state presented the testimony of Anthony Guida, a former internet crimes investigator for the Knoxville Police Department, and Tiffany Dailey, the victim's mother. Ms. Dailey testified that LE's date of birth is July 19, 1997. In early January 2002, Ms. Dailey left LE with the defendant and his wife for most of the day. Ms. Dailey was shown and identified state's exhibit 2 as a photograph of LE taken when she was four years old.
>
> Mr. Guida was contacted by Assistant District Attorney John Bobo who requested a "forensic examination" of several computers and digital media

seized from the defendant's residence. Mr. Guida extracted a video of LE and numerous still images from the video. He described pictures two through 20 as individual screen shots taken from the video, whereas the first and last pictures came directly from a digital camera; those photographs were designated as DE-23 and DE-24. DE-23 and DE-24 were both taken with a Sony movie camera within 30 to 45 seconds of each other, indicating they were taken in succession from the same camera. For the record, Mr. Guida described DE-23 as a "child exposing her genitalia, sitting on a chair, raising her shirt and staring at a camera." He described DE-24 as showing a vagina and "what appears to be a finger moving the underwear aside."

The defendant did not testify or offer any other proof.

The trial court found that the state had proven beyond a reasonable doubt that the defendant was guilty of especially aggravated sexual exploitation of a minor. Relevant to this case, a person commits especially aggravated sexual exploitation of a minor who "knowingly promote[s], ... use[s], ... or permit[s] a minor to participate in the performance or in the production of material which includes the minor engaging in ... sexual activity." Tenn.Code Ann. § 39-17-1005(a)(1) (2003). The trial court noted that it was undisputed that the defendant produced the material and that LE was a minor at the time. Regarding the disputed issue whether the minor was engaging in sexual activity, the trial court concluded that the state had proven that element of the offense based on the lascivious exhibition of the minor's genitals and pubic area, the striptease nature of the poses, and the intent or design to elicit a sexual response in the viewer.

*Id*. at **1-2 (footnote omitted).

With respect to petitioner's sentence, "[t]he trial court found and applied the following enhancement factors to the defendant's conviction: (5) the victim was particularly vulnerable because of age, and (16) the defendant abused a position of private trust. The trial court did not mention any mitigating sentencing factors." *Id*. at *6 (citing Tenn. Code Ann. § 40-35-114 (5), (16)) (footnote omitted). On direct appeal, petitioner acknowledged that an

4

enhancement for abuse of a position of private trust was appropriate but argued that "the state failed to demonstrate that the victim was particularly vulnerable because of her age." *Id*.

The Tennessee Court of Criminal Appeals found that the enhancement based upon the victim's vulnerability was appropriate.

> This case involved an extremely young victim, four years old. When investigating officers interviewed the defendant after his residence was searched and after incriminating information had been retrieved from the defendant's computers, the defendant in this case gave a statement to the investigating officers. The record before us contains a videotape of that statement in which the defendant admits that he photographed and videotaped the victim on January 9, between 1:00 and 3:00 p.m. The defendant's wife was not present at the time, and he was alone with the victim in the downstairs area of the residence for that two-hour interval. This evidence, in our opinion, is sufficient to demonstrate that the victim was incapable of resisting or summoning help.

*Id*. at *7 (citation omitted).

The appellate court, nevertheless, determined that "[t]he defendant's lack of prior criminal history qualifies as a mitigating sentencing factor." *Id*. at *8. For that reason, the court reduced petitioner's sentence by one year. *Id*.

Petitioner then filed a petition for post-conviction relief, in which he alleged he had received the ineffective assistance of counsel during his criminal proceedings. He also alleged various constitutional errors, including a claim that the trial court had unconstitutionally enhanced petitioner's sentence in violation of *Blakely v. Washington*, 542 U.S. 296 (2004), in which the Supreme Court held that any fact other than that of a prior conviction used to enhance a defendant's sentence must be proven to a jury beyond a reasonable doubt. *Id*. at 301. The post-conviction petition was denied by the trial court after

5

an evidentiary hearing and the Tennessee Court of Criminal Appeals affirmed. *Linder v. State*, No. E2008-00693-CCA-R3-PC, 2010 WL 3210399 (Tenn. Crim. App. Aug. 13, 2010) [Addendum 4, Doc. 4], *perm. app. denied, id.* (Tenn. Oct. 12, 2010) [Addendum 4, Doc. 6].

With respect to the *Blakely* claim, the appellate court summarized the issue as follows:

> The record reflects that Petitioner admitted many of the salient facts of this case during a 2002 interview with investigators. For example, he acknowledged that the victim was his four-year-old step-granddaughter, that he had a relationship with her lasting her entire life, and that she was alone with him in his house when the offense occurred. This interview was videotaped and admitted into evidence at trial. Also, the victim's mother testified regarding the close relationship the victim had with Petitioner prior to this offense.
>
> The factual recitation in this court's direct appeal opinion did not include two procedural matters that are important in our post-conviction review. First, after Petitioner lost his suppression battle in the trial court, he sought an interlocutory appeal. The trial court allowed the appeal, but this court denied review, as did our supreme court. The suppression issue was therefore left for review on direct appeal.
>
> Second, as noted in the recitation, Petitioner was convicted, and his sentence was enhanced, based upon facts found by the trial judge. What is not noted is that Petitioner waived his right to a jury trial on March 8, 2004. The waiver was apparently given in anticipation of a plea agreement, but Petitioner did not actually plead guilty in March 2004. Instead he was scheduled to enter his plea on June 1. When it came time to do so, Petitioner changed his mind and insisted upon proceeding to trial. In response, both the trial court and Petitioner's trial counsel informed him that he had waived his right to a jury trial and therefore would be tried by the bench. Three weeks later, the United States Supreme Court issued its opinion in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *Blakely'*s requirement that juries, not judges, find all facts other than prior convictions that raise the ceiling of potential punishment disrupted sentencing proceedings across the country. The reverberations continued when Petitioner went to trial in September 2004. Significantly, although Petitioner was advised of his jury rights when he waived them in March 2004, the trial court did not revisit the

6

issue after *Blakely*; Petitioner was never informed on the record of the impact of *Blakely*.

In September 2004, Petitioner went to trial and was convicted. At the subsequent sentencing hearing, the trial court noted that Petitioner's waiver was limited to a jury determination of guilt but nevertheless concluded that *Blakely* did not prevent the court from finding enhancement facts. It then found, over Petitioner's *Blakely* objections, facts supporting two enhancement factors.

*Id*. at \*\*2-3.

At the time petitioner waived his right to a jury trial, "when no enhancement factors applied, [Tennessee] sentencing law provided for presumptive sentences that were typically the minimum sentence within the applicable range." *Id*. at \*9. Accordingly, without the enhancements to his sentence, petitioner was facing a sentence of eight years. *Id*. The appellate court concluded that the enhancement of petitioner's sentence by the trial court violated the rule announced in *Blakely*, but also "that the *Blakely* error in this case was harmless beyond a reasonable doubt." *Id*. at 12 (footnote omitted).

Petitioner next filed in the trial court a motion to reduce or modify his sentence, again arguing that he was entitled to a lesser sentence based upon the *Blakely* violation. The motion was denied and the Tennessee Court of Criminal Appeals affirmed. *State v. Linder*, E2009-01927-CCA-R3-CD (Tenn. Crim. App. Sept. 29, 2010) [Addendum 7, Doc. 9], *perm. app. denied, id.* (Tenn. Jan. 12, 2011) [Addendum 7, Doc.14].

Petitioner also filed a state petition for the writ of habeas corpus, which was summarily dismissed and the Tennessee Court of Criminal Appeals affirmed. *Linder v. Mills*, No. E2010-00462-CCA-R3-HC, 2010 WL 2852645 (Tenn. Crim. App. July 21, 2010)

[Addendum 6, doc. 5], *perm. app. denied, id.* (Tenn. Nov. 10, 2010) [Addendum 6, Doc. 7]. The basis for the state habeas petition was again that the trial court had unconstitutionally enhanced petitioner's sentence in violation of *Blakely*, as extended by *Cunningham v. California*, 549 U.S. 270 (2007). *Id*. at *1. The appellate court found that the summary dismissal of the habeas petition was proper because "[t]he petition fail[ed] to state a cognizable claim for habeas corpus relief, and the Petitioner fail[ed] to comply with the procedural requirements of the habeas corpus statute." *Id*.

In support of his petition for the writ of habeas corpus, petitioner alleges that his enhanced sentence violated *Blakely* and thus should be reduced to the minimum sentence of eight years. The respondent contends that petitioner is not entitled to relief because the decision of the Tennessee Court of Criminal Appeals state courts rest on reasonable determinations of the facts and reasonable applications of federal constitutional law.

III.   <u>State Court Findings</u>

Pursuant to 28 U.S.C. § 2254(d), petitioner may not obtain federal habeas corpus relief with respect to a claim that was adjudicated on the merits in a state court proceeding unless the state court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law or (2) was not reasonably supported by the evidence presented to the state court. In addition, findings of fact by a state court are presumed correct and petitioner must rebut the presumption of correctness by clear and convincing evidence. 28

8

U.S.C. § 2254(e). Petitioner has failed to rebut, by clear and convincing evidence, the findings of the state courts and they will be presumed correct by this court.

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), clarified the distinction between a decision "contrary to," and an "unreasonable application of," clearly established Supreme Court law under § 2254(d)(1). A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id*. at 413. A state court decision "involves an unreasonable application of clearly established Federal law" only where "the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. In light of the foregoing, the court will consider petitioner's claim for relief.

IV.  Discussion

In *Blakely v. Washington*, 542 U.S. 296 (2004), the Supreme Court reiterated its previous holding in *Apprendi* that "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

9

submitted to a jury, and proved beyond a reasonable doubt."' *Id*. at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). The Court also made clear the following:

> [T]he "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

*Id*. at 303-04 (citations omitted) (emphasis in original). The Supreme Court has also noted that a *Blakely* error is subject to a harmless error review. *Washington v. Recuenco*, 548 U.S. 212, 220-22 (2006).

In this case, the Tennessee Court of Criminal Appeals found that, while petitioner's enhanced sentence violated *Blakely*, the error was harmless. The appellate court based its conclusion upon the proof adduced at trial:

> Petitioner has never contested the facts critical to the enhancements at issue. The proof at trial that the victim was his four-year-old step-granddaughter was not disputed. Nor has he ever contested the fact that he was the sole caretaker in the house the day he committed the crime.
> 
> Upon review of the record, which includes Petitioner's admission of the critical facts during the videotaped March 2002 interview, there is no rational basis for a jury to have concluded that the victim was not particularly vulnerable or that Petitioner did not abuse a position of trust. We have no difficulty concluding, beyond a reasonable doubt, that no reasonable jury confronted with this record would have declined to find the critical facts for these enhancements. As described below, the evidence on these points is uncontroverted and overwhelming.

*Linder v. State*, 2010 WL 3210399 at \*11.

10

The Tennessee Court of Criminal Appeals first addressed the vulnerability of the victim as understood under Tennessee law.

> To establish that the victim in this case was "particularly vulnerable" under Tennessee Code Annotated section 40-35-114(4), the evidence must have shown that she was unable to either "resist the crime, summon help, or testify at a later date." "A victim's youth does not necessarily equate with vulnerability," and although "[t]he State is required to proffer evidence in addition to the victim's age ... that evidence need not be extensive."
>
> Here, the evidence showed that the victim was a very young girl-only four years old. It also showed that she was confined in the house with her adult step-grandfather. She was thus unable to resist or summon help. No rational jury would have found otherwise.

*Id*. at *12 (quoting *State v. Lewis*, 44 S.W. 3d 501, 505 (Tenn. 2001)) (footnote omitted).

The appellate court next addressed whether the evidence demonstrated that the petitioner abused a position of trust.

> Tennessee Code Annotated section 40-35-114(14) provides that Petitioner's sentence may be enhanced if he abused a position of private trust. This, obviously, includes two questions: (1) whether Petitioner was in a position of trust vis-a-vis the victim; and (2) whether he abused that trust. Our supreme court has noted that "[t]he position of parent, step-parent, babysitter, teacher, [and] coach are but a few obvious examples." But the critical question concerns "the nature of the relationship," not its formal title, and turns on whether the relationship "promoted confidence, reliability, or faith."
>
> Here, Petitioner was both the victim's step-grandparent and, at the time, her babysitter. He had known the victim all her life. Furthermore, her mother testified that the victim had a trusting relationship with Petitioner, whom "she thought loved her" and whom "she looked at like a Papaw." No reasonable jury could have concluded that Petitioner was not in a position of trust. Nor could it have concluded that Petitioner did not abuse that trust in committing this crime. Indeed, he essentially said as much in his 2002 interview with investigators when he told them that his conduct was "totally inappropriate" because he was the adult and she was the child. This interview was introduced into evidence at Petitioner's trial.

11

*Id.* (quoting *State v. Kissinger*, 922 S.W. 2d 482, 488 (Tenn. 1996)).

Based on the foregoing, the Tennessee Court of Criminal Appeals found that the violation of *Blakely* constituted harmless error.

> The predicate facts for these enhancements were neither contested nor, upon review of the record, even really contestable. The evidence supporting both was overwhelming. We thus conclude, after our thorough review of the record, that the *Blakely* error in this case was harmless beyond a reasonable doubt.

*Id.* (footnote omitted).

The Supreme Court has held that in cases involving federal court review of a state-court criminal judgment under 28 U.S.C. § 2254, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)). *Fry* adopted *Brecht*'s more "state-friendly standard" for cases involving collateral review of state-court decisions. *Hereford v. Warren*, 536 F.3d 523, 532-33 (6th Cir. 2008). The controlling question for a harmless error analysis under *Blakely* is whether a defendant "would actually have *received a lesser sentence* absent the *Blakely* violation." *Baker v. Voorhies*, 392 F. App'x 393, 402 n.7 (6th Cir. 2010) (citation omitted) (emphasis in original).

This court has reviewed the transcripts of evidence at petitioner's bench trial and his sentencing hearing [Addendum 1, Vol. 8, Transcript of Evidence at Bench Trial, pp. 1-118, and Vol. 9, Transcript of Evidence at Sentencing, pp. 1-25] and finds the decision by the Tennessee Court of Criminal Appeals is supported in the record. Given the fact that the victim was four years old and alone in the house with the defendant at the time of the offense,

12

she was particularly vulnerable as defined under Tennessee law. Also, petitioner's relationship with the victim clearly indicates that he abused a position of trust as defined under Tennessee law. Accordingly, the court agrees with the state appellate court that a jury would have concluded beyond a reasonable doubt that petitioner's conduct merited the two sentence enhancements that he received and thus any *Blakely* error was harmless.

Based upon the foregoing, the appellate court's decision was neither contrary to, nor did it involve an unreasonable application of, federal law as set forth in *Fry v. Pliler* and *Brecht v. Abrahamson*. Accordingly, petitioner is not entitled to relief on his *Blakely* claim.

V.  Conclusion

Petitioner's motion for summary judgment will be **DENIED**, the petition for habeas corpus relief will be **DENIED**, and this action will be **DISMISSED**. All other pending motions will be **DENIED** as **MOOT**. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253(c); Rule 22(b) of the Federal Rules of Appellate Procedure. The court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure. The court will further **DENY** petitioner leave to proceed *in forma pauperis* on appeal.

**AN APPROPRIATE ORDER WILL ENTER.**

                                                     s/ Thomas W. Phillips
                                                     United States District Judge